**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert McBurnie, | ) | No. CV-09-8139-PCT-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| City of Prescott, et al., | ) | |
| Defendants. | ) | |

The court has before it plaintiff's motion for summary judgment (doc. 68), defendants' response (doc. 75), and plaintiff's reply (doc. 76). We also have before us defendants' motion for partial summary judgment (doc. 71), plaintiff's response (doc. 73), and defendants' reply (doc. 77).

**I**

Plaintiff Robert McBurnie was an employee in the City of Prescott's Parks and Recreation Department. In November 2007, he filed a grievance against his then supervisor, defendant Eric Smith, alleging that the City's forced use of compensatory time in lieu of overtime pay violated the Fair Labor Standards Act, 29 U.S.C. § 207. In February 2009, in an effort to settle the overtime dispute, the City sent two checks to plaintiff—one in the amount of $26,000 for overtime compensation and the other in the amount of $5,778.32 for attorney's fees. The settlement letter enclosed with the two checks stated that "[b]y cashing

1 either or both of these two checks your client is accepting these funds as resolution of any
2 and all overtime issues; we have indicated that on each of these checks." DSOF, ex. 5.
3 Plaintiff accepted and cashed the $26,000 settlement offer, but returned the check for
4 attorney's fees to the City.

5     In early 2007, plaintiff advised human resources that he no longer wanted to work for
6 Smith, and on March 24, 2007, he was transferred to the Facilities Maintenance Department,
7 where he was supervised by defendants Ted Hanneman and Mic Fenech. Plaintiff remained
8 in the Facilities Maintenance Department until February 23, 2009, when he and 11 other full-
9 time City employees were laid off. DSOF ¶ 15.

10     With a shotgun-style approach, plaintiff filed this complaint, asserting 13 claims
11 related to his discharge, including wrongful discharge in violation of Arizona constitutional
12 and statutory law, "unlawful reprisal" and retaliation in violation of state and federal law,
13 breach of contract, breach of the covenant of good faith and fair dealing, intentional
14 interference with contract, intentional and negligent infliction of emotional distress, and
15 violation of his first amendment and equal protection rights under the United States
16 Constitution. He contends that his discharge was in retaliation for his complaining to
17 management about FLSA violations and to the Arizona Division of Occupational Safety and
18 Health about safety violations in the workplace. Plaintiff also seeks attorney's fees related
19 to the settlement of his FLSA wage claim.

20 **II. Federal Law Claims**
21 **A. FLSA Attorney's Fees**

22     Plaintiff moves for summary judgment on Count 12, his claim for attorney's fees
23 under the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216 ("FLSA"). The FLSA was
24 enacted for the purpose of protecting workers from substandard wages and oppressive
25 working hours. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S. Ct.
26 1437, 1444 (1981). The Act provides that an employee shall receive overtime wages "at a
27 rate not less than one and one-half times the regular rate at which he is employed." 29
28 U.S.C. § 207(a)(1). The FLSA further provides that any employer who violates the overtime

wage provision will be liable to the affected employee in the amount of unpaid overtime wages, plus an additional equal amount as liquidated damages. Id. § 216(b).

Because of the unequal bargaining power between employers and employees, Congress made the FLSA provisions mandatory. D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 116, 66 S. Ct. 925, 929 (1946) ("neither wages nor damages for withholding them are capable of reduction by compromise"). An individual may not relinquish rights under the Act, even by private agreement between the employer and employee, "because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine, 450 U.S. at 740, 101 S. Ct. at 1445 (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707, 65 S. Ct. 895, 902 (1945)).

The FLSA provides two avenues for claim resolution. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-54 (11th Cir. 1982). First, under section 216(c), the Secretary of Labor can supervise an employer's voluntary payment to employees of unpaid wages. 29 U.S.C. § 216(c). An employee who accepts such supervised payment waives his right to file an action for both the unpaid wages and for liquidated damages. Id. Or, under section 216(b), an employee can bring a private action for back wages under the FLSA and can "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's Food Stores, 679 F.2d at 1353 (citing D.A. Schulte, Inc, 328 U.S. at 113 n.8, 66 S. Ct. at 928 n.8). Settlements that do not follow the two methods authorized by the Act are unenforceable. Hohnke v. United States, 69 Fed. Cl. 170, 178-79 (Fed. Cl. 2005).

Here, we have neither an agreement supervised by the Department of Labor, nor entered as a stipulated judgment by a court. The settlement agreement regarding back wages is fully consummated and the parties do not seek court approval. Therefore, the settlement falls outside the two statutorily-prescribed avenues of FLSA claim resolution.

An award of attorney's fees to a prevailing party in an action brought under section 216(b) is mandatory. "The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

1  costs of the action." 29 U.S.C. § 216(b) (emphasis added); <u>Christiansburg Garment Co. v.
2  EEOC</u>, 434 U.S. 412, 415 n.5, 98 S. Ct. 694, 697 n.5 (1978) (referring to § 216 of the FLSA
3  as one of the "statutes [that] make fee awards mandatory for prevailing plaintiffs"). The
4  payment of the attorney's fees discharges a statutory, not a contractual, duty. Because the
5  FLSA was intended to provide workers with the full compensation due under the law,
6  requiring a claimant to pay attorney's fees incurred to enforce his FLSA rights would
7  frustrate the statute's underlying purpose. <u>See</u> <u>Maddrix v. Dize</u>, 153 F.2d 274, 275-76 (4th
8  Cir. 1946) (stating that Congress intended that a claimant "should receive his full wages plus
9  the penalty without incurring any expense for legal fees or costs").

10  Thus, the statement in the settlement letter that "[b]y cashing either or both of these
11  two checks your client is accepting these funds as resolution of any and all overtime issues"
12  in unenforceable as to plaintiff's claim for attorney's fees under the FLSA. Plaintiff has not
13  waived his right to attorney's fees under the Act. We grant summary judgment in favor of
14  plaintiff on Count 12.

### B. Equal Protection

16  Plaintiff alleges that his discharge was in retaliation for his complaints to management
17  about FLSA violations and to the Arizona Division of Occupational Safety and Health
18  ("ADOSH") regarding workplace safety issues. He contends in Count 11 that he was
19  retaliated against in violation of his equal protection rights under the Fourteenth Amendment.

20  The Equal Protection Clause prohibits the states from denying any person equal
21  protection of the laws, with the general objective that all persons similarly situated should
22  be treated alike. <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct.
23  3249, 3254 (1985). In order to support a § 1983 claim based on equal protection violations,
24  plaintiff must allege that (1) he is a member of an identifiable class, (2) he was intentionally
25  treated differently from others similarly situated, and (3) there is no rational basis for the
26  difference in treatment. <u>Engquist v. Oregon Dept. of Agric.</u>, 553 U.S. 591, 602, 128 S. Ct.
27  2146, 2153 (2008).

28  Plaintiff's equal protection claim is based not on his membership in an identifiable

- 4 -

1  class, but on his allegation that he was treated differently in retaliation for his speech. Such
2  claim implicates the First Amendment, not the Equal Protection Clause. See, e.g., Boyd v.
3  Ill. State Police, 384 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may
4  be vindicated under the First Amendment or Title VII, but not the equal protection clause");
5  Bernheim v. Litt, 79 F.3d 318, 323 (2nd Cir. 1996) ("we know of no court that has
6  recognized a claim under the equal protection clause for retaliation following complaints of
7  racial discrimination"); Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure
8  or generic retaliation claim, however, simply does not implicate the Equal Protection
9  Clause.").

10  We conclude that plaintiff has failed to state a cognizable equal protection claim.
11  Defendants' motion for summary judgment is granted on this claim.

**C. First Amendment**

13  The First Amendment shields public employees who speak as citizens on matters of
14  public concern. Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957 (2006).
15  However, "when public employees make statements pursuant to their official duties, the
16  employees are not speaking as citizens for First Amendment purposes, and the Constitution
17  does not insulate their communications from employer discipline." Id. at 421, 126 S. Ct. at
18  1960.

19  Plaintiff's claim of retaliation stems from statements he made to ADOSH regarding
20  safety concerns.[1] Specifically, he complained that he was required to train unqualified
21  employees to do his job. Complaint ¶ 33. Plaintiff testified that during the course of
22  employment with the City he made numerous reports to OSHA, ADOSH, risk management,
23  and his various supervisors regarding safety concerns, ranging from manpower, safety
24  equipment, work space, hazardous chemicals, ventilation, ball field structures, electrical
25  systems, emergency lighting, personal protective equipment, and machine guards. DSOF,

---

[1] Although plaintiff raised two alleged instances of protected speech–complaints of safety concerns and FLSA violations–he now clarifies that his "First Amendment claim is premised primarily upon his right to oppose unsafe work practices." Response at 15.

- 5 -

1  ex. 28 at 212-17. Despite this extensive history, plaintiff now argues that reporting safety
2  concerns was not part of his regular duties because it was not included in his written job
3  description. Opposition to DSOF ¶ 31. Formal job descriptions, however, "often bear little
4  resemblance to the duties an employee actually is expected to perform." Garcetti, 547 U.S.
5  at 424-25, 126 S. Ct. at 1962.

6  Plaintiff has demonstrated that his report of safety concerns was a regular part of his
7  official duties, and therefore he was not speaking as a citizen for first amendment purposes.
8  Defendants' motion for summary judgment on Count 13 is granted.

### D. Section 1983

10  Plaintiff bases his § 1983 claims on the underlying violations of his equal protection
11  and first amendment rights.[2] We have granted summary judgment on these claims. Because
12  there is no underlying constitutional violation, there can be no § 1983 liability. City of Los
13  Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986).

### E. Punitive Damages

15  Plaintiff seeks punitive damages against the individual defendants on the federal law
16  claims, asserting that their actions "constitute a malicious, reckless or callous indifference
17  to [his] federal rights." Complaint ¶ 82. In support of their motion for summary judgment,
18  defendants state only that "none of the factual allegations in the record approach [the punitive
19  damages] standard." Motion at 11. This is woefully inadequate to support the motion.
20  Defendants' motion for summary judgment on the issue of punitive damages is denied. This
21  relates to Count 10 only, the sole remaining federal claim.

### III. State Law Claims

### A. Wrongful Termination

24  Plaintiff filed a claim of wrongful termination under the Arizona Employment
25  Protection Act ("AEPA"), A.R.S. § 23-1501(3)(c) (Count 1), and state common law (count
26  2), against the City of Prescott and Jolaine Jackson, the City's human resources director.

---

28  [2]Plaintiff does not predicate § 1983 liability on FLSA violations.

- 6 -

Under the AEPA, an employee may bring a claim for wrongful termination if the employer terminated the employment relationship in violation of a contract, statute, or public policy.

Defendants contend that supervisors, including Jackson, are not "employers" under the Act and therefore cannot be personally liable for wrongful termination. While ordinarily supervisors are not employers, in Higgins v. Assmann Elecs., Inc., the court held that a supervisor may be liable for his own acts constituting wrongful termination under the AEPA. 217 Ariz. 289, 294, 173 P.3d 453, 458 (Ct. App. 2007); see also Logan v. Forever Living Prods. Int'l, Inc., 203 Ariz. 191, 194, 52 P.3d 760, 763 (2002) (action for wrongful termination under AEPA against corporation and its agents held viable where agents performed the wrongful act).

Defendants also argue that claims against Jackson should be dismissed because she "was never in McBurnie's direct chain of command." Motion at 6. But defendants do not controvert plaintiff's evidence that the lay off was initiated either by defendants Jackson or Fenech. Response at 2. Again, defendants' argument is insufficient to support the motion. An issue of fact remains as to Jackson's personal involvement in plaintiff's discharge. Defendants' motion for summary judgment as to Counts 1 and 2 is denied.

### B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity with regard to the state law claims. Motion at 9. In Arizona, government employees are entitled to qualified immunity for those acts that are "reasonably within the employee's discretionary authority," such as "when officials are setting policy or performing an act that inherently requires judgment or discretion." Chamberlain v. Mathis, 151 Ariz. 551, 555, 729 P.2d 905, 909 (1986). Qualified immunity protects government officials from liability for acts performed within the scope of their public duties "unless the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." Id. at 558, 729 P.2d at 912.

Without reference to any facts, including any discussion of the individual defendant's participation in the challenged conduct, defendants argue only that all defendants are entitled

1 to qualified immunity because "they were utilizing discretion when choosing to lay off
2 McBurnie." Motion at 10. This statement, without more, is insufficient to establish that
3 defendants are entitled to qualified immunity.

### C. Intentional Interference with Contract

5 In Count 6, plaintiff asserts that the individual defendants intentionally interfered with
6 his contractual employment relationship with the City of Prescott. To establish a claim of
7 intentional interference with contractual relations, plaintiff must show (1) the existence of
8 a contract between the plaintiff and a third party, (2) the defendant's knowledge that the
9 contract exists, (3) intentional interference by the defendant that caused the third party to
10 breach the contract, (4) defendant's conduct constituted improper conduct, and (5) damages.
11 Safeway Ins. Co., Inc. v. Guerrero, 210 Ariz. 5, 10, 106 P.3d 1020, 1025 (2005). Defendants
12 contend that because they were supervisors acting within the scope of their authority as
13 management representatives, they were, in effect, the employer, and could not interfere with
14 his or her own contract. This argument was rejected in Wagenseller v. Scottsdale Mem.
15 Hosp., 147 Ariz. 370, 710 P.2d 1025 (1985), superseded in other respects by A.R.S. § 23-
16 1501 (1996). Wagenseller held that an employee may be liable for tortious interference if
17 his actions were also improper. Id. at 386-87, 710 P.2d at 1041-42. Defendants' motion for
18 summary judgment on Count 6 is denied.

### D. Negligent Infliction of Emotional Distress

20 Arizona does not recognize a claim for negligent infliction of emotional distress in the
21 absence of resulting physical injuries. Keck v. Jackson, 122 Ariz. 114, 115, 593 P.2d 668,
22 669 (1979); Restatement (Second) of Torts § 436A (1965) (providing no liability if conduct
23 results in emotional disturbance alone without bodily injury). "In order for there to be
24 recovery for the tort of negligent infliction of emotional distress, the shock or mental anguish
25 of the plaintiff must be manifested as a physical injury." Keck, 122 Ariz. at 115, 593 P.2d
26 at 669. "Transitory physical phenomena such as weeping and insomnia are not the type of
27 bodily harm which would sustain a cause of action for emotional distress." Gau v. Smitty's
28 Super Valu, Inc., 183 Ariz. 107, 109, 901 P.2d 455, 457 (Ct. App. 1995). However, "long-

1  continued nausea or headaches may amount to physical illness, [as well as] long continued
2  mental disturbance . . . notwithstanding their mental character." Restatement (Second) of
3  Torts § 436A cmt. c (1965).

4  Defendants contend that plaintiff has failed to demonstrate the requisite manifestation
5  of physical injuries to support a claim for negligent infliction of emotional distress. Although
6  a close issue, we conclude that a genuine issue of material fact exists as to whether plaintiff
7  has suffered a physical injury. Plaintiff claims that he has suffered ongoing depression,
8  anxiety, headaches, sleeplessness, and eating problems. He claims that he has "incurred
9  medical treatment, psychological and psychiatric treatment, medical and psychological
10 expenses, and medication expenses" as a result of defendants' actions. Complaint ¶¶ 75-76.
11 This is at least sufficient to survive summary judgment. Defendants' motion for summary
12 judgment on Count 9 is denied.

### E. Unlawful Reprisal, Intentional Infliction of Emotional Distress

14 Plaintiff withdraws his claims for unlawful reprisal under A.R.S. §§ 38-531, 38-532
15 (count 3) and for intentional infliction of emotional distress (count 8). Response at 16.
16 Therefore, defendants' motion for summary judgment is granted as to these claims.

### F. Spouses

18 Defendants contend that the spouses of the individual defendants are improper
19 defendants and should be dismissed. In Arizona, there is no presumption of community
20 liability if the action is based on tortious conduct. Selby v. Savard, 134 Ariz. 222, 229, 655
21 P.2d 342, 349 (1982). The community is not liable for one spouse's intentional torts unless
22 it is specifically shown that the other spouse consented to the act or that the community
23 benefitted from it. Id. There is no showing that the spouses in the instant case either
24 consented to the alleged tortious act or that the community would benefit from it.
25 Defendants' motion for summary judgment on behalf of the individual defendants' spouses
26 is granted.

### IV. Affirmative Defenses

28 Plaintiff moves for summary judgment on defendants' affirmative defense of failure

- 9 -

1 to mitigate damages. Plaintiff testified that he sought work through contacts in the industry,
2 and through the unemployment office. PSOF ¶¶ 9-11. He testified that as a result of his
3 efforts he found some part-time work. Id. Defendants have failed to set forth specific facts,
4 by affidavit or otherwise, showing a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2).
5 Therefore, summary judgment is granted in plaintiff's favor on this issue.

6 Plaintiff also seeks summary judgment on defendants' affirmative defenses of waiver,
7 estoppel, laches, payment and release, subject matter jurisdiction, accord and satisfaction,
8 failure to join indispensable parties, and contributory/comparative fault. Defendants have
9 set forth no facts, either in their answer or in their response to plaintiff's motion for summary
10 judgment, to support their affirmative defenses. This is insufficient to oppose plaintiff's
11 motion. See Fed. R. Civ. P. 56(e)(2).

12 We grant plaintiff's motion for summary judgment on defendants' affirmative
13 defenses.

## V. Conclusion

15 **IT IS ORDERED GRANTING** plaintiff's motion for summary judgment with
16 respect to the attorney's fee claim (count 12), and with respect to defendants' affirmative
17 defenses (doc. 68). The amount of attorney's fees will be determined pursuant to LRCiv
18 54.2.

19 **IT IS FURTHER ORDERED GRANTING** defendants' motion for summary
20 judgment (doc. 71) in favor of the defendant spouses, and in favor of all defendants with
21 respect to count 3 (A.R.S. §§ 38-531, 38-532), count 8 (intentional infliction of emotional
22 distress), count 11 (equal protection), and count 13 (first amendment).

23 **IT IS FURTHER ORDERED DENYING** defendants' motion for summary
24 judgment (doc. 71) with respect to the claim for punitive damages and state law claims of
25 wrongful termination (count 1) and intentional interference with contract (count 6).

26 The counts remaining are 1, 2, 4, 5, 6, 7, 9, and 10. That these claims have survived
27 the motion for summary judgment is more indicative of the inadequacy of defendants'
28 motion than the merit of the claims. We found many of plaintiffs' claims to be inapposite

1 and confusing and we assume a jury would be similarly confused. We urge plaintiff's
2 counsel to carefully select the claims to advance at trial so as to avoid unnecessary confusion.
3       DATED this 21st day of December, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge