1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Robert McBurnie,                    )    No. CV-09-8139-PCT-FJM
                                        )
10              Plaintiff,              )    **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                      )
    City of Prescott, et al.,           )
13                                      )
                Defendants.             )
14                                      )
                                        )
15

16

17

18          The court has before it defendants' motion for summary judgment on plaintiff's First

19  Amendment retaliation claim (Doc. 202), plaintiff's response (Doc. 207), and defendants'

20  reply (Doc. 210).  We also have before us plaintiff's motion for leave to file memorandum

21  opposing defendants' motion to strike (Doc. 212), defendants' response (Doc. 216), and

22  plaintiff's reply (Doc. 219).

                                        **I**

23          Plaintiff Robert McBurnie was an employee with the City of Prescott, performing the

24  City's electrical work.  He frequently worked overtime hours in his work with the Prescott

25  Parks and Recreation Department until the City determined its budget could no longer

26  support overtime pay.  Plaintiff filed a grievance against his then supervisor, defendant Eric

27  Smith, alleging that the City's forced use of compensatory time in lieu of overtime pay

28

1    violated the Fair Labor Standards Act (FLSA).

2    Plaintiff was eventually transferred to the Facilities Maintenance Department where

3    he was supervised by defendants Ted Hanneman and Mic Fenech.  Hanneman asked plaintiff

4    to cross train two other employees, Dave Suggs and Mike Robbins, on electrical issues so

5    that other employees could work the City's special events.  Plaintiff refused to cross train

6    Suggs and Robbins, claiming that the work required a qualified electrician.  Eventually,

7    plaintiff raised his safety concerns regarding cross training with the Arizona Department of

8    Occupational Safety and Health (ADOSH).  Plaintiff continued to refuse to cross train his

9    coworkers until February 23, 2009, when he and 11 other full-time City employees were laid

10   off as part of a City-wide reduction in force.  Defendants assert that plaintiff's selection for

11   lay off was largely due to his steadfast refusal to follow his supervisor's directive to cross

12   train other employees on the City's electrical systems.

13   Plaintiff filed this action against the City of Prescott and its employees asserting 13

14   claims related to his discharge, including a claim that his First Amendment rights were

15   violated when he was retaliated against for complaining to ADOSH about safety concerns

16   related to cross training other employees.  We dismissed plaintiff's First Amendment

17   retaliation claim on defendants' motion for summary judgment, concluding that reporting

18   safety concerns was part of plaintiff's regular duties, and therefore his speech was not

19   constitutionally protected.  During trial, we granted defendants' motion for judgment as a

20   matter of law on certain claims, including plaintiff's claim for negligent infliction of

21   emotional distress.  The matter went to the jury on plaintiff's sole remaining claim of

22   retaliatory discharge in violation of the FLSA.  The jury returned its verdict in favor of

23   defendants on the remaining claim.

24   On appeal, the Ninth Circuit reversed and remanded on plaintiff's claims of First

25   Amendment retaliation, FLSA retaliation, and negligent infliction of emotional distress.  The

26   matter is now before us on defendants' post-appeal motion for summary judgment on

27   plaintiff's First Amendment retaliation claim (Doc. 202).

28

**II**

1           The Ninth Circuit concluded that plaintiff had raised a genuine and material dispute

2   over whether his speech, and in particular his communications with ADOSH, were beyond

3   the scope of his regular job duties.  The court remanded for further proceedings on this claim

4   "without prejudice as to whether defendants may file a renewed motion for summary

5   judgment on the basis of the evidentiary record presented at trial."  (Doc. 182-2 at 3).  In

6   accordance with that instruction, we issued a scheduling order stating that any post-appeal

7   motion for summary judgment will be "limited to the trial record on the First Amendment

8   retaliation claim."  (Doc. 198).  Neither party objected to that limitation.

9           Defendants properly limited their post-appeal motion for summary judgment to the

10  trial record.  However, plaintiff offered new evidence, including a new affidavit by plaintiff,

11  a previously undisclosed interview transcript of Julie McGirk, the ADOSH final investigative

12  report  regarding  plaintiff's  job  termination,  plaintiff's  post-termination  ADOSH

13  communications, and an August 14, 2008 ADOSH letter to plaintiff, none of which was

14  produced at trial.  To allow plaintiff to introduce evidence outside the record would unfairly

15  prejudice the defendants and is contrary to clear directives of both the Ninth Circuit and this

16  court.  We will not consider evidence not contained in the trial record for purposes of

17  defendants' post-appeal motion for summary judgment.

18          Plaintiff moves for leave to file a memorandum in response to what he calls

19  defendants' motion to strike this extra-record evidence. But defendants did not file a separate

20  motion to strike.  Instead, they properly challenged plaintiff's proffered evidence in their

21  objections to plaintiff's statement of facts.  See LRCiv 7.2(m)(2).  We do not need a

22  memorandum from plaintiff, nor is one permitted under the federal or local Rules of Civil

23  Procedure.  Plaintiff's motion for leave to file a memorandum is denied (Doc. 212).

**III**

25          Defendants move for summary judgment on plaintiff's First Amendment retaliation

26  claim.  In opposition to this motion, plaintiff contends that he was retaliated against for

27  making two complaints to ADOSH—one "in July 2008" and the other "on August 8, 2008."

28

1 <u>Response</u> at 3, 4, 8.[1]

2       In evaluating plaintiff's First Amendment claim, we must find "a balance between the

3 interests of the [employee], as a citizen, in commenting upon matters of public concern and

4 the interest of the State, as employer, in promoting the efficiency of the public services it

5 performs through its employees." <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568, 88 S. Ct.

6 1731, 1734-35 (1968). This balancing requires a five-step inquiry: (1) whether plaintiff

7 spoke on a matter of public concern; (2) whether plaintiff spoke as a private citizen or public

8 employee; (3) whether plaintiff's protected speech was a substantial or motivating factor in

9 the adverse employment action; (4) whether the City had an adequate justification for treating

10 plaintiff differently from members of the general public; and (5) whether the City would have

11 taken the adverse employment action absent the protected speech. <u>Dahlia v. Rodriguez</u>, 735

12 F.3d 1060, 1067 (9th Cir. 2013) (citing <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir. 2009)).

13 The plaintiff bears the burden of proof on the first three factors. The burden shifts to the

14 government to prove the last two. <u>Clairmont v. Sound Mental Health</u>, 632 F.3d 1091, 1103

15 (9th Cir. 2011). "If the plaintiff fails to carry his burden at any step, qualified immunity

16 should be granted to the defendant." <u>Id.</u>

17 **A. Matter of Public Concern**

18       The Ninth Circuit has "defined the scope of the public concern element broadly and

19 adopted a liberal construction" of what constitutes an issue of public concern under the First

20 Amendment. <u>Id.</u> The issue of whether an employee is speaking on a matter of public

21 concern is a question of law for the court to decide. We review the "content, form, and

22 context of a given statement, as revealed by the whole record." <u>Id.</u> The content of the speech

23 is "the greatest single factor" in the inquiry. <u>Id.</u> Speech that "helps the public evaluate the

24 performance of public agencies" or discusses "threats to public safety" are generally

25 considered matters of public concern. <u>Id.</u> at 1104. Speech relating to internal personnel

26

27      [1]Plaintiff does not oppose defendants Eric Smith and Rudy Baranko's motion for
summary judgment on the basis of qualified immunity. Therefore, summary judgment is
28 granted in favor of Smith and Baranko.

1 grievances and disputes, however, ordinarily will not be viewed as addressing matters of

2 public concern.

3       Here, the speech at issue is limited to plaintiff's communications with ADOSH in July

4 2008 and on August 8, 2008 regarding his safety concerns in having to cross train coworkers

5 whom he believed were not qualified. Response at 3, 4, 8. Defendants attempt to construe

6 these communications as a self-serving effort by plaintiff to maximize his overtime hours by

7 remaining the only employee trained to perform electrical services at City events. However,

8 even if we assume that plaintiff's motive was to present a personal grievance in reporting to

9 ADOSH, he nevertheless presented plausible employee and public safety concerns to the

10 government agency charged with investigating and regulating the City. See Clairmont, 632

11 F.3d at 1105 (holding that the motive behind the speech is not relevant "so long as [the

12 speech itself] meets the public concern test"). Therefore, broadly and liberally construing

13 plaintiff's alleged speech, we conclude that plaintiff's alleged complaints to ADOSH

14 presented issues of public concern.

15                         **B. Private Citizen or Public Employee**

16       Our second inquiry is whether plaintiff spoke as a private citizen or public employee.

17 "[W]hen public employees make statements pursuant to their official duties, the employees

18 are not speaking as citizens for First Amendment purposes, and the Constitution does not

19 insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S.

20 410, 421, 126 S. Ct. 1951, 1960 (2006). If speech is classified as having been made pursuant

21 to an employee's official duties, then the speech is denied First Amendment protection. "The

22 proper inquiry [to determine the scope of an employee's official duties] is a practical one."

23 Id. at 424, 126 S. Ct. at 1962. Whether an employee spoke as public employee or a private

24 citizen is a mixed question of fact and law. Posey v. Lake Pend Oreille Sch. Dist., 546 F.3d

25 1121, 1130 (9th Cir. 2008). The "scope and content of a plaintiff's job responsibilities" is

26 a question of fact, but the "ultimate constitutional significance of the facts as found" is a

27 question of law. Id. at 1129-30.

28       Plaintiff complained about his safety concerns regarding cross training other

1 employees whom he believed were not qualified to perform electrical work. Defendants

2 argue that plaintiff's "job description, as well as the City's general expectations of its

3 employees, required the identification and reporting of safety concerns as part of McBurnie's

4 official duties." MSJ at 4-5. It is undisputed that the safe operation of the City's electrical

5 systems was a core aspect of plaintiff's job. The City's Safety Manual required employees

6 to promptly report accidents, injuries, and unsafe work conditions. DSSOF ¶7. Plaintiff

7 acknowledged that the reporting of safety concerns to supervisors was a necessary part of his

8 work. DSSOF ¶ 11.

9 However, plaintiff's speech regarding his safety concerns in cross training consisted

10 not only of complaints made to his supervisors, which plaintiff concedes were part of his job

11 responsibilities, but also to ADOSH, an independent state agency. "When a public employee

12 communicates with individuals or entities outside of his chain of command, it is unlikely that

13 he is speaking pursuant to his duties." Dahlia, 735 F.3d at 1074 (citing Freitag v. Ayers, 468

14 F.3d 528, 545-46 (9th Cir. 2006)).

15 An issue of fact exists as to whether plaintiff acted as a private citizen to expose

16 official wrongdoing to an independent state agency, or whether he acted as a disgruntled

17 employee refusing to follow his supervisors' directive in order to maintain his monopoly on

18 performing City electrical work. Reporting to an outside agency, while indicative of speech

19 by a private citizen, does not conclusively establish private speech. Instead, evidence of

20 motive, as well as the content and context of the speech are all relevant in determining

21 whether an employee is speaking as a private citizen.

22 Although we conclude that a material issue of fact exists with respect to the second

23 step of the First Amendment analysis, we nevertheless proceed to step three because

24 summary judgment in favor of defendants is appropriate if plaintiff fails to meet his burden

25 of proof at any one of the first three steps in the analysis.

**C. Substantial or Motivating Factor**

27 The third inquiry in our analysis–whether plaintiff's speech was a substantial or

28 motivating factor in his termination "is purely a question of fact. . . .[W]e must assume the

- 6 -

1 truth of plaintiff's allegations." Eng, 552 F.3d at 1071.

2 As previously discussed, plaintiff premises his First Amendment retaliation claim on
3 two communications with ADOSH–one in July 2008, and the other on August 8, 2008.
4 Response at 3, 4.  While plaintiff makes some reference to the record demonstrating that a
5 phone call to ADOSH occurred sometime in late July 2008, he offers no evidentiary support
6 regarding a contact with ADOSH on August 8, 2008.  A party cannot demonstrate a material
7 dispute of fact if he fails to properly support an assertion of fact as required by Fed. R. Civ.
8 P. 56(c)(1).[2]

9 More importantly, however, plaintiff does not allege that he informed any City
10 defendant about either of these two contacts with ADOSH.  Indeed, plaintiff testified at trial
11 that he did *not* inform City personnel of any ADOSH contacts other than his request for
12 information. Tr. 250, lns 13-20 (Q: "Did you tell anybody at the city that you had spoken to
13 this fellow named Mr. Harnsberger [ADOSH compliance officer] at any time between the
14 time you spoke to him and the time Ms. Mandeville came to the City?"  A: "No.").
15 Obviously, plaintiff's speech cannot be a motivating factor in any adverse employment action
16 if the defendants were unaware of the speech.  Therefore, even assuming the truth of
17 plaintiffs' allegations that he contacted ADOSH on two occasions voicing legitimate
18 concerns of safety violations by the City, he has failed to present a material issue of fact that
19 this presumed constitutionally protected speech was a motivating factor in the adverse
20 employment actions.

21 Plaintiff asserts that the ADOSH consultation meeting on August 14, 2008 "occurred
22 as a result of McBurnie's *complaint to ADOSH*," Response at 4 (emphasis added) (citing
23 PSOF ¶¶ 138-42), the inference being that defendants knew of the complaint.  However,

24

25 [2]At PSOF ¶ 142, plaintiff relies on his own 2013 affidavit and a his 2009 post-
26 termination ADOSH complaint (neither of which was produced at trial) in which he refers
to an August 8, 2008 contact with ADOSH.  Although we have already held that we will not
27 consider evidence not contained in the trial record for purposes of this motion, we note that
although the documents refer to an August 8, 2008 contact with ADOSH, plaintiff presents
28 no evidence demonstrating that defendants knew about this communication.

1 plaintiff's citation to the record mischaracterizes the evidence he offers in support of this

2 argument. Instead, the record demonstrates only that the ADOSH meeting "occurred because

3 of McBurnie's *concerns* the City was violating OSHA regulations." PSOF ¶ 138.[3]

4 Plaintiff also cites to a transcript of an October 21, 2009 ADOSH interview of City

5 risk management employee Julie McGirk, which is not part of the trial record. But even the

6 improper cite to McGirk's ADOSH interview transcript confirms that McGirk knew that

7 plaintiff had frequently expressed concerns about cross training and accordingly on her own

8 initiative, McGirk scheduled the August 14, 2008 consultation meeting with ADOSH. See

9 McGirk Tr. at 47-49. Therefore, the materials cited do not support plaintiff's argument that

10 defendants knew about plaintiff's July 2008 or August 8, 2008 complaints to ADOSH.

11 Plaintiff has failed to establish a genuine question of fact on this issue.

12 Finally, although plaintiff does not advance the argument that he was retaliated against

13 for his communications at the August 14, 2008 consultation meeting with ADOSH, we note

14 that it is undisputed that the City arranged the meeting and required plaintiff to attend.

15 Therefore, plaintiff's attendance at the meeting was part of his job responsibilities.

**D.**

17 Even if plaintiff had shown that his speech to ADOSH was a substantial or motivating

18 factor in the adverse employment actions, we would nevertheless conclude that the City

19 defendants had an adequate justification for treating plaintiff differently from other members

20 of the general public and that it would have reached the adverse employment decisions even

21 in the absence of the plaintiff's protected conduct.

22 Plaintiff's alleged protected conduct was not "a but-for cause of the adverse

23 employment action." Eng, 552 F.3d at 1072. Defendants have adequately demonstrated, and

24 plaintiff has failed to refute, that plaintiff repeatedly refused his supervisor's directive to

25 cross train his coworkers, and that the City had a legitimate operational need to have multiple

26

27
28 [3]Plaintiff cannot create a material dispute of fact in opposition to a motion for summary judgment by mischaracterizing the evidence.

1   individuals trained on the special events electrical system in order to avoid the incurrence of

2   employee overtime.   The First Amendment does not insulate an employee from the

3   consequences of refusing to perform legitimate work assignments.

**IV**

5   Therefore, based on the foregoing, we conclude that plaintiff has failed to demonstrate

6   that a genuine issue of material fact exists as to whether his speech to ADOSH was a

7   substantial or motivating factor in the adverse employment actions, and alternatively has

8   failed to refute the defendants' evidence that it would have made the same adverse

9   employment decision in the absence of any protected speech.

10   **IT IS ORDERED GRANTING** defendants' motion for summary judgment on

11   plaintiff's First Amendment retaliation claim (Doc. 202).

12   **IT IS FURTHER ORDERED DENYING** plaintiff's motion for leave to file

13   memorandum (Doc. 212).

DATED this 14th day of February, 2014.

*Frederick J. Martone*

Frederick J. Martone
Senior United States District Judge